## WILLEY ET AL. *v.* THE STATE.

GRAND JURORS.—*Record.*—Where the record states that the grand jurors returning an indictment were " good and lawful men, householders" of the proper county, it will be presumed that they possessed all the statutory qualifications.

INDICTMENT.—*Motion to Quash.*—A motion to quash an indictment must, as a general rule, be predicated upon objections apparent upon the face of the indictment.

SAME.—*Return of Indictment.*—Where the record recites that the grand jury came into " open court and returned the following indictment," giving its number and setting it out, it sufficiently shows that it was returned into open court, and sufficiently identifies the indictment.

SAME.—*Filing Indictment.*—The statute does not require the clerk to file an indictment in open court or that the act of marking it filed shall be done in open court.

SAME.— *Voluntary Manslaughter.*—An indictment for manslaughter charging that the defendant did, on, etc., at, etc., unlawfully and feloniously kill a person named, by then and there unlawfully and feloniously cutting, stabbing, and mortally wounding said person with a knife, etc., is sufficient. So, also, if it is charged that the instrument used was unknown to the grand jurors.

INVOLUNTARY MANSLAUGHTER.—Involuntary manslaughter is where the killing is done involuntarily, but in the commission of some unlawful act.

SAME.—*Indictment.*—An indictment for involuntary manslaughter must show that the defendant was in the commission of some unlawful act, and that the death resulted therefrom.

SAME.—Alleging in such case that the death resulted from using, unlawfully, wilfully, and feloniously, an instrument upon a pregnant female, for the purpose of producing a miscarriage, the use of such instrument not being necessary to preserve the life of the woman, is insufficient.

PRACTICE.—*Indictment Containing Good and Bad Counts.—General Finding of Guilty.*—Where a defendant is found guilty upon an indictment containing two or more counts, one of which is bad, and the evidence tends to support the bad count, and none of it to support the good counts, the judgment must be reversed.

From the White Circuit Court.

*H. C. Thornton* and *O. M. Conahay,* for appellants.

*J. C. Denny,* Attorney General, for the State.

DOWNEY, J.—This was an indictment against the appellant for manslaughter. The indictment contains three counts, and, after the heading, is as follows :

" 1. The grand jury of White County, in the State of Indiana, good and lawful men, duly and legally impanelled,

charged and sworn to inquire into felonies, etc., in and for the body of said county of White, in the name and by the authority of the State of Indiana, on their oaths present that Sylvester Willey and Sarah Wheaton, both of said county, on the 15th day of December, A. D. 1873, at the county and State aforesaid, did then and there unlawfully and feloniously kill Mary L. Willey, by then and there unlawfully and feloniously cutting, stabbing, and mortally wounding the said Mary L. Willey with a knife, which they, the said Sylvester Willey and Sarah Wheaton, then and there had and held in their hands.

" 2. The grand jurors aforesaid, upon their oaths aforesaid, further present that said Sylvester Willey and Sarah Wheaton, on the 15th day of December, A. D. 1873, at the county and State aforesaid, did then and there unlawfully and feloniously kill Mary L. Willey, by then and there unlawfully and feloniously cutting, stabbing, and mortally wounding said Mary L. Willey, with an instrument to the grand jurors unknown, which they, the said Sylvester Willey and Sarah Wheaton, then and there had and held in their hands.

" 3. The grand jurors aforesaid, upon their oaths aforesaid, further present that the said Sylvester Willey and Sarah Wheaton, on the 15th day of December, A. D. 1873, at the county and State aforesaid, did then and there unlawfully and feloniously kill Mary L. Willey, by then and there unlawfully, wilfully, and feloniously employing a certain instrument, to the grand jurors unknown, upon the body of said Mary L. Willey, who was then and there a pregnant woman, by then and there unlawfully, wilfully, and feloniously introducing said instrument into the womb of the said Mary L. Willey, with intent then, there, and thereby to procure the miscarriage of the said Mary L. Willey, the said employment of the said instrument not being then and there necessary to preserve the life of the said Mary L. Willey, contrary to the statute," etc.

A motion to quash each count of the indictment was made by the defendants separately, and overruled by the

court. They then pleaded not guilty, and on a trial by jury were found guilty and their punishment fixed at ten years imprisonment in the state prison. They asked for a new trial, but it was denied them, and sentence was pronounced against them according to the verdict of the jury.

By their assignment of errors, the defendants have presented for our decision the question as to the sufficiency of each count of the indictment, and also whether or not the court erred in refusing to grant them a new trial.

The first ground in support of the motion to quash is, that it does not affirmatively appear from the record that the grand jurors who found the indictment possessed all the requisite qualifications mentioned in the statute, which requires them to "be reputable freeholders or householders of the proper county, and taxable therein." 2 G. & H. 431, sec. 1. The transcript states that they were "good and lawful men, householders of White county, Indiana." We think it should be presumed that the grand jurors possessed all the statutory qualifications. The want of qualification does not appear on the face of the indictment, if there was any such want, and a motion to quash an indictment must, as a general rule, be predicated upon objections apparent on the face of the indictment. *Bell* v. *The State,* 42 Ind. 335, and cases cited.

The next ground in support of the motion is, that the record does not show that the indictment was returned into open court. The record states: "Come into open court the grand jury heretofore empanelled herein, and return the following described indictment, number thirteen, for manslaughter, which reads as follows, to wit:" then follows the indictment. It is said by counsel that this is insufficient because it does not show that while the grand jury was in open court the indictment was returned. We cannot agree with counsel in this. The formula is that in common use, and sufficiently shows that the indictment was returned into open court by the grand jury.

But it is urged that "the record wholly fails to show that

the indictment was ever filed, much less that it was filed in open court." There is nothing in this objection. The indictment as copied in the record has on it the file mark of the clerk as of the date when it was returned by the grand jury into court. Counsel concede that the file mark appears upon the indictment as copied in the record, but say: "Who put it there? The clerk? He does not say so. Nobody says so. The record does not say, either directly or indirectly, or inferentially, that it was filed by the clerk, and even this recital does not state that it was filed in open court as the statute requires." Counsel refer to 2 G. & H. 394, sec. 16. That section says the indictment, when signed by the foreman, must be "returned into open court, and filed by the clerk." It does not require the clerk to file the indictment in open court, nor that the act of marking it filed shall be done in open court.

Again counsel say the indictment is not identified as that which was returned by the grand jury. The record, as we have seen, shows the return of the indictment by its number, and then sets it out.

It is also urged that the record fails to show that the indictment was endorsed by the foreman of the grand jury as a true bill. It is conceded that the proper indorsement appears in the record as being on the indictment, but counsel say: "Who wrote it, or whether it was written before or after the return, does not appear." This is entirely too critical.

Counsel urge the insufficiency of the first and second counts of the indictment, for the reason that they do not sufficiently describe the crime. It is said the use of the words "unlawfully" and "feloniously" are not sufficient to characterize the killing and constitute a charge of manslaughter. In our opinion, the counts are each sufficient as a charge of manslaughter. 2 G. & H. 438, sec. 8. Counsel suppose the allegations of these counts of the indictment consistent with an innocent and necessary surgical operation. But this would not be an unlawful and felonious act such as that described in the indictment. The first and

.second counts of the indictment describe what is known as voluntary manslaughter.

The third count is for involuntary manslaughter. Homicide of this kind is when the killing is done involuntarily, but in the commission of some unlawful act. 2 G. & H. .438, sec. 8. To make the paragraph good, it must be alleged that the defendants were in the commission of some unlawful act, and that the death resulted therefrom. The death of the party is something not contemplated by the parties, but as they are engaged in the commission of the unlawful act, and as death results from it, they are guilty of man-.slaughter.

Counsel for appellants insist that it does not appear from the third paragraph of the indictment that the defendants were in the commission of an unlawful act when the death resulted, and refer, to sustain their position, to *Bassett* v. *The State*, 41 Ind. 303.

The statute, on the subject of abortion, 2 G. & H. 469, .sec. 36, so far as applicable to the case under consideration, provides that every person who shall wilfully administer to any pregnant woman, or to any woman whom he supposes to be pregnant, any thing whatever, or shall employ any .means with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, shall be guilty, etc. In the case cited, it was held that where the indictment alleged that the employment of the instrument was not necessary to preserve the life of the woman, and did not allege that the miscarriage was not necessary to save her life, the indictment was not good and should have been ·quashed.

The count of the indictment in question in this case .alleges that "the employment of the said instrument was not necessary to preserve the life of the said Mary L. Willey." It thus appears that it is not charged that the defendants were in the commission of an unlawful act, when the death ensued. We must hold that the third count of the indictment was bad.

There are other questions discussed by counsel, but some of them are not so presented that we can decide them, and others need not be decided.

What disposition must be made of the case upon the conclusions which we have reached with reference to the questions already decided? The first two counts of the indictment we have found to be good. The third we have found to be defective. Upon examination of the evidence, we find it all tends to support the third count, and none of it to support the first and second counts. Under these circumstances, we think the judgment must be reversed.

The judgment is reversed, and the cause remanded, with instructions to sustain the motion to quash the third count of the indictment; and the clerk will certify to the warden of the state prison.