WILLEY v. THE STATE.

CRIMINAL LAW.—*Grand Jury.*—*Where County Commissioners Have Failed to Select.*—At the March session, 1874, of a board of county commissioners, two grand juries were selected according to law, one for the March term and one for the June term, 1874, of the circuit court, and no grand jury for the October term, 1874, or for the January term, 1875, was ever selected by the commissioners. At the October term, 1874, said court ordered that the grand jury be summoned to appear on the second day of the next term of said court, and the grand jury so selected for the June term, 1874, assembled under said order at the January term, 1875.

*Held,* that said order for the summoning of a grand jury at the January term, 1875, was sufficient, and that said grand jury was competent to find an indictment at said January term.

SAME.—*Indictment.*—*Abortion.*—In an indictment for an attempt to procure an abortion, an averment that the procurement of the miscarriage was not necessary to preserve the life of the woman is equivalent to an averment that the miscarriage was not necessary to preserve her life.

SAME.—*Contradictory Statements in Bill of Exceptions.*—Where, in a bill of exceptions in a criminal action, it was stated that the defendant pleaded not guilty, and also that he consented that the court should find him guilty and sentence him to imprisonment for a certain period, and there was a verdict of guilty, and a motion for a new trial, because of the insufficiency of the evidence, was overruled, the Supreme Court took the view most favorable to the defendant, and treated the case as one in which there had been a plea of not guilty, and, the evidence in the record being insufficient, reversed the judgment.

From the Carroll Circuit Court.

*H. C. Thornton* and *A. H. Dame,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

DOWNEY, J.—This was an indictment against Sylvester Willey and the appellant, Sarah Willey. The case originated in the county of White, and the venue was changed to Carroll.

The indictment charges that Sylvester Willey and Sarah Willey, late of said county, on, etc., at, etc., did unlawfully and feloniously kill Mary L. Willey, by then and there unlawfully, wilfully and feloniously employing a certain instrument, to the grand jurors unknown, upon the body of the said Mary L. Willey, who was then and there a

pregnant woman, by then and there unlawfully introdu-
cing said instrument into the womb of the said Mary L.
Willey, with the intent then and there and thereby to
procure the miscarriage of the said Mary L. Willey, neither
the employment of said instrument nor the procurement of
said miscarriage being then and there necessary to preserve
the life of the said Mary L. Willey, contrary to the statute,
etc.

The defendants pleaded, in abatement, that the indictment
was found at the January term, 1875, of the White Circuit
Court; that the board of commissioners of the county of
White, at their March term, 1874, which was their first reg-
ular session in said year, on the 7th day of March, 1874,
with the assistance of the clerk of the White Circuit Court, in
the manner provided by law, proceeded to draw twelve grand
jurors for said White Circuit Court; and said board of commis-
sioners, on said day, did, in like manner, as aforesaid, pro-
ceed to draw twelve other grand jurors for said White Cir-
cuit Court; that said two grand juries, so drawn as afore-
said, were all the grand jurors or names of persons to act as
grand jurors, drawn or selected by said board of commission-
ers and said clerk at any time from the March term, 1874,
to the March term, 1875, of said board of commissioners;
that the auditor of said county recorded among the records
of said board of commissioners the names of the persons so
drawn as aforesaid, and delivered a certificate thereof to
said clerk, who recorded the same on the order book of said
White Circuit Court; and that the names of said persons, so
drawn as and for grand jurors, were recorded on the order
book of said White Circuit Court.

It is further alleged, that the said board of commissioners
and said clerk, at said March term, 1874, drew two grand
juries, and no more, as above set forth; nor did said board
of commissioners and said clerk, at any other time during
said year 1874, draw any other persons to act as grand
jurors than as above alleged; that said two panels of grand
jurors, so drawn as aforesaid, were for the March term and

the June term, 1874, of said White Circuit Court, and there were no grand jurors drawn by said board of commissioners and said clerk for the October term, 1874, and the January term, 1875, of said White Circuit Court.

It is then alleged, that Hon. David P. Vinton was the judge of said circuit court when said indictment was found and returned, and had been for two years prior thereto; that said judge made no order requiring the clerk to issue a *venire* for any grand jury to appear on any day of said January term, 1875, of said court, nor at said term; that said White Circuit Court made an order, of which the following is a copy: "And it is further ordered by the court, that the grand jury be summoned to appear on the second day of the next term of this court;" which said order was made at the October term of said court, 1874, and entered on the order book of said court, which is the only order in the premises under which said body of men assembled, which found and returned said indictment; that no order was made by said judge requiring the said clerk to issue a *venire* for the grand jury drawn and selected for said January term, 1875, nor was any such grand jury drawn and selected at any time.

The defendants say that said indictment was found and returned by the body of men drawn as aforesaid for the second session of said White Circuit Court, which said body of men were drawn for the June term, 1874, of said circuit court, but were not drawn for said January term, 1875, and had no legal right or authority to act as grand jurors for said term, or to find and return the said indictment. The defendants, protesting and declaring their innocence, and saying they are not guilty of said charge in said indictment set forth, say that said body of men which found said indictment was illegal and void, by reason of the premises aforesaid, and was not a legal grand jury, which could find or return said indictment; that said body of men, which pretended to act as said grand jury, had no legal authority or right to find or return said indictment; that said indictment

and each and every act of said body of men was illegal, fraudulent and void. Wherefore, etc.

A demurrer to this plea in abatement was filed by the prosecuting attorney, and sustained by the court.

A motion to quash the indictment was made by the defendants, and overruled by the court.

The defendants pleaded not guilty, and elected to be tried separately. The bill of exceptions shows, that, after the trial of Sylvester Willey, the said appellant waived a jury, and, by her agreement, the cause was submitted to the court for trial, and that "it was agreed between the counsel for the State and the counsel for the defendant, that the evidence heard in the cause against Sylvester Willey should be considered as the evidence in this cause, and it was also agreed that the court should find defendant guilty, and fix her punishment at imprisonment in the state prison for a term of four years. Said agreement was made in open court, and in the presence of defendant, and she assented thereto. Said evidence was as follows." The evidence in the case against Sylvester Willey is then set out. The court found the defendant guilty, fixed her punishment at four years' imprisonment in the state female prison at Indianapolis, overruled a motion made by her for a new trial and in arrest of judgment, and sentenced her according to the finding.

Errors are assigned as follows:

1. Sustaining the demurrer to the plea in abatement.
2. Overruling the motion to quash the indictment.
3. Refusing to grant a new trial.
4. Overruling the motion in arrest of judgment.

We are of the opinion that the plea in abatement is not sufficient. It alleges, in effect, that, at the March session of the board of commissioners in 1874, two grand juries were selected, and that they were for the March and June terms, 1874, of the court, and that no grand juries for the October term, 1874, and the January term, 1875, were ever selected. In this condition it was proper to empanel a grand jury

according to sec. 10, 2 G. & H. 433. The section is as follows:

"A panel of grand jurors may be filled in whole or in part, when necessary, by summoning the requisite number of freeholders or householders of the proper county under the direction of the court who shall in the discretion of the court be selected from persons residing in the several townships, unless in consequence of delay in filling the panel, or for other satisfactory reasons, the court shall otherwise direct." *Hardin* v. *The State*, 22 Ind. 347; *Ward* v. *The State*, 48 Ind. 289.

We think the order for summoning a grand jury at the January term was sufficient. It is urged that it is insufficient, because it appears to have been made by the court, and not by the judge, as required by the act of March 10th, 1873. Acts 1873, p. 158. We think the order made must be regarded as having been made by the judge. We do not see that the order could have been made by the court without having been made by the judge. It may be doubtful whether any such previous order for summoning the grand jury is at all necessary, when, as in this instance, no grand jury had been selected for the term. The fact alleged, that the grand jury was made up of the same men selected to serve as grand jurors at the June term, 1874, is no ground for quashing the indictment. It is objected that, in this way, the same persons might be selected to serve on the grand jury for two terms in the same year, in violation of sec. 7, 2 G. & H. 432. It is enough to say, now, that in this case such could not have been, for the two terms of court were in different years.

It is urged that the indictment is bad, for the reason that it does not show that the miscarriage was not necessary to preserve life, according to the decisions in *Bassett* v. *The State*, 41 Ind. 303, and *Willey* v. *The State*, 46 Ind. 363.

The case at bar is clearly distinguishable from the cases cited. To say that the procurement of the miscarriage was not necessary to preserve life is equivalent to saying that

the miscarriage was not necessary to preserve life, at least in its application to the statute on which, in part, the indictment is founded. Sec. 36, 2 G. & H. 469. Procurement is defined to be " the act of procuring, obtaining, bringing about, or effecting," etc. Webster. We must not require too much exactness in the use of words.

Upon this assignment, the case presents itself in an unusual aspect. The clerk's entries show a regular trial of the cause by the court, as in ordinary cases; but the bill of exceptions shows, as before stated, that no witnesses were examined, and that the case was submitted on the same evidence given in the case of Sylvester Willey, previously tried, the defendant agreeing that the court should find her guilty, and fix her punishment at imprisonment for four years. How is the case to be regarded? We have read the evidence, and are clearly of the opinion that it makes no case against the defendant. If the case is to be treated as one where the defendant pleaded guilty, the judgment ought to be affirmed. If, on the other hand, it is to be treated as depending upon the sufficiency of the evidence, and as one where there has been no plea of guilty, it should be reversed. Not only the clerk's entries, but also the bill of exceptions, show that the defendant pleaded not guilty. We have, then, two contradictory statements in the bill of exceptions, one that the defendant pleaded not guilty, and the other that she consented that the court should find her guilty and send her to the state prison for four years. We solve the difficulty by adopting that view of the case most favorable to the prisoner, and treating the case as before us on the sufficiency of the evidence. As we have already said, the evidence did not warrant the conviction, and there is no other course for us but to reverse the judgment.

The judgment is reversed, and the cause remanded, with instructions to grant a new trial. The clerk will certify to the superintendent of the prison.